IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALONZO DEAN JENKINS,

      Defendant.

Case No. 3:17-cr-00108-TMB

**ORDER ON DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255
(DKT. 112)**

## I. INTRODUCTION

The matter comes before the Court on Defendant Alonzo Dean Jenkins's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion") and supplement thereto ("Supplemental Motion").[1] Through his attorney, Jenkins filed a Notice of Intent to Rely on Initial § 2255 Motion.[2] In his Motion and Supplemental Motion, Jenkins requests relief on the grounds that his attorney rendered ineffective assistance.[3] The Government opposes the Motion.[4] The Motion has been fully briefed and is ripe for resolution. For the reasons discussed below, the Motion is **DENIED**.

---

[1] Dkt. 112 (Motion); Dkt. 113 (Supplemental Motion).

[2] Dkt. 144 (Counsel's Notice of Intent to Rely on Original § 2255 Filing).

[3] Dkt. 112 at 4–5; Dkt. 113 at 9–12.

[4] Dkt. 150 (Opposition); Dkt. 157 (Supplemental Opposition).

1

## II. BACKGROUND

During a traffic stop in January 2017, officers from the Anchorage Police Department ("APD") discovered a handgun sticking out from under the driver seat of Jenkins's car.[5] Jenkins had prior felony convictions, including a felony drug conviction.[6] So Jenkins was arrested and the gun was seized.[7] In September 2017, a grand jury indicted Jenkins on one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[8] The case eventually proceeded to a jury trial.

At trial, the Government called various witnesses, including APD Officer Bryan Kahler. Officer Kahler had transported Jenkins to jail following his arrest.[9] As an exhibit, the Government also played a video recording of the transport.[10] While he was being transported, Jenkins stated the following: "I ain't going to lie to you man [I] seen the motherfucker but I wasn't about to touch it . . . what the fuck was I supposed to do."[11] Officer Kahler responded, "[W]ell you know you're not supposed to have a firearm with you."[12]

Officer Kahler testified that Jenkins made multiple spontaneous statements indicating that he knew there was a firearm in the vehicle. According to Officer Kahler, the context of these

---

[5] Dkt. 43 at 2–3, 7 (Final Report and Recommendation Regarding Motion to Suppress).

[6] *Id.* at 5.

[7] *Id.* at 1, 7.

[8] *Id.* at 1; Dkt. 2 (Indictment).

[9] Dkt. 101 at 18 (Jury Trial Transcript Day Two).

[10] *Id.* at 2, 20, 58, 72–76.

[11] Dkt. 113 at 4 (omission in original).

[12] *Id.*

statements was clear.[13] Officer Kahler testified "[Jenkins] did make some statements . . . along the lines of he . . . knew it was in there, but he hadn't touched it."[14] Officer Kahler also testified that Jenkins used the word "MFer" in reference to a gun; the basis of this conclusion was "[t]hat he was aware that there was a firearm in the vehicle."[15] Jenkins's attorney subsequently cross-examined Officer Kahler about Jenkins's statements regarding the firearm.[16]

During trial, the Court and parties also discussed whether Jenkins would testify. As the Court reviewed jury instructions, it stated that it had two alternative instructions: one with Jenkins testifying and one without him testifying.[17]

> THE COURT: Mr. Jenkins, we've had this discussion. We'll have it again. At some point you need to decide whether or not you want to testify. Do you understand?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Okay. So we'll just leave those two there for the time being until Mr. Jenkins makes his decision.[18]

Later, the Court and Jenkins again discussed whether Jenkins would testify.

> THE COURT: . . . It may be appropriate for you to have a conversation with Mr. Gardner as to whether or not you want to testify.
>
> As I told you the last time we talked about this, you never have to testify. It's never your burden to prove you're innocent. It's always the Government's burden to prove the charge against you.

---

[13] Dkt. 101 at 57.

[14] *Id.* at 19.

[15] *Id.* at 75.

[16] *Id.* at 86–87.

[17] *Id.* at 61.

[18] *Id.*

> I have already instructed the jury that you don't have to testify, right, but it's a decision you have to make. I would encourage you to talk with Mr. Gardner. He's a very experienced criminal defense lawyer. Listen to his advice.
>
> In the end, you know, you have to make what you think is a decision in your best interest, but we're fast approaching that point. So take this opportunity over the recess, talk it over with Mr. Gardner, because at some point here when I get back I need to know whether or not you want to testify.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are we clear?
>
> THE DEFENDANT: Yes, sir.[19]

Following a recess, the Court returned to the issue of Jenkins's potential testimony.

> THE COURT: . . . Do you want to testify? Have you had a chance to consider whether or not you want to testify?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you or do you not want to testify?
>
> THE DEFENDANT: I will not be testifying.
>
> THE COURT: You have had a chance to talk this over with Mr. Gardner?
>
> THE DEFENDANT: Yes, me and [c]ounsel have spoke [sic] about it.[20]

---

[19] *Id.* at 147.

[20] *Id.* at 149–50.

Jenkins did not testify.[21] Jenkins also did not say anything when his attorney told the Court that he would rest and not put on any evidence.[22] The jury ultimately found Jenkins guilty of one count of felon in possession of a firearm.[23]

In November 2018,[24] Jenkins filed a Notice of Appeal.[25] The Ninth Circuit denied his appeal in August 2019.[26] Jenkins filed the present Motion and Supplemental Motion in August 2020.[27] Therein, he raises three grounds for relief under 28 U.S.C. § 2255, all of which allege a form of ineffective assistance of counsel.[28] Jenkins did not submit any affidavits or any other evidence in support of his Motion and Supplemental Motion.[29]

In support of its Opposition to the Motion, the Government filed the Declaration of Darrel Gardner, Jenkins's allegedly ineffective attorney.[30] Therein, Gardner averred that during the course of his representation, he advised Jenkins about procedures and events that would happen at

---

[21] Dkt. 102 at 8 (Jury Trial Transcript Day Three).

[22] Dkt. 101 at 163.

[23] Dkt. 70 (Jury Verdict Form).

[24] The filing is signed and dated May 19, 2018, but it was not docketed and date stamped by the court until November 19, 2018.

[25] Dkt. 92 at 1 (Notice of Appeal).

[26] Dkt. 106 at 1–2 (Memorandum Opinion).

[27] Dkt. 112; Dkt. 113.

[28] *Id.*; *Id.*

[29] Dkt. 147 (Motion to Withdraw Non-Notarized Affidavit and Notice that Petitioner Will Not be Filing an Affidavit).

[30] Dkt. 156 (Gardner Declaration).

5

trial.[31] "I explained to Mr. Jenkins that it was his fundamental right and ultimately his decision as to whether or not he wanted to testify at trial."[32] He further averred that he advised Jenkins that it was not in his best interest to testify because in so doing, he would expose himself to cross-examination and its inherent risks; he already had a potential defense, based on trial evidence; and his testimony was not necessary for defense argument.[33] "Mr. Jenkins apparently agreed with my assessment and decided not to testify, as reflected in the colloquy with the judge [as] transcribed . . . I did not preclude Mr. Jenkins from testifying. It was Mr. Jenkins, not me, who told the judge that he did not want to testify."[34]

### III. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a district court may "vacate, set aside or correct the sentence" of an imprisoned federal defendant if "the sentence was imposed in violation of the Constitution or laws of the United States." Upon receipt of such a motion, the court must, unless the motion and case files and records conclusively show that the defendant is not entitled to relief, "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[35] If the court finds that the defendant's constitutional rights have been infringed such that the judgment is vulnerable to collateral attack, "the court shall vacate and set

---

[31] *Id.* at 3, ¶ 5.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 3, ¶¶ 5–6.

[35] 28 U.S.C. § 2255(b).

the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[36]

The Sixth Amendment right to counsel provides the right to effective assistance of counsel, including the right to effective assistance at the trial level.[37] A claim pursuant to § 2255 alleging ineffective assistance of counsel is therefore rooted in the Sixth Amendment's right to counsel. A defendant alleging ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington*.[38] Under this test, the defendant must show both the deficient performance of counsel and a resulting prejudice.[39]

Deficient performance requires a showing that trial counsel's representation "fell below the objective standard of reasonableness," as measured by prevailing professional norms.[40] There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[41] To demonstrate prejudice, the defendant must show that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[42] "A reasonable probability that the results of the proceeding would

---

[36] *Id.*

[37] *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *Evitts v. Lucey*, 469 U.S. 387, 392 (1985).

[38] 466 U.S. 668, 687 (1984).

[39] *Id.*

[40] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

[41] *Strickland*, 466 U.S. at 689.

[42] *Id.* at 694.

have been different is 'a probability sufficient to undermine confidence in the outcome.'"[43] While a defendant need not show prejudice by a preponderance of the evidence, the defendant must do more "than simply assert[] an error that could theoretically have some effect on the outcome of the proceeding."[44] Failure to meet either prong is fatal to a defendant's claim.[45] The defendant carries the burden of proving he is entitled to relief.[46]

"[T]he district court may deny a § 2255 motion without holding an evidentiary hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or allege conclusions rather than statements of fact."[47] Mere conclusory statements, as opposed to specific factual allegations, do not justify a hearing.[48] "[I]f the record refutes the [defendant's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[49] But when § "2255 motions are based on alleged occurrences entirely outside the record, which if true would support relief, the court must conduct

---

[43] *United States v. Applebury*, No. 3:17-cr-00121-TMB-1, 2020 WL 4883936, at *3 (D. Alaska Aug. 19, 2020) (quoting *Strickland*, 466 U.S. at 694)).

[44] *Id.* (citing *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008)).

[45] *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) ("Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'") (quoting *Strickland*, 466 U.S. at 697).

[46] *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

[47] *Applebury*, 2020 WL 4883936, at *3 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Geozos,* No. 3:06-CR-082-RRB-JDR, 2010 WL 4942571, at *2 (D. Alaska Nov. 24, 2010)).

[48] *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982).

[49] *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007).

a hearing on those allegations 'unless, viewing the petition against the record, its allegations do not state a claim for relief or are so patently frivolous or false as to warrant summary dismissal.'"[50]

## IV. DISCUSSION

In his Motion and Supplemental Motion, Jenkins alleges that his attorney was ineffective in three ways. Jenkins argues that each allegation constitutes an independent basis for relief. In his Supplemental Motion, Jenkins contends that his attorney was ineffective because he deprived him of his right to testify at trial. In his Motion, Jenkins vaguely states that his attorney was also ineffective for two other reasons: (1) Officer Witte "lying on [the] stand" and "profiling speculation"[51] and (2) "surppersion [sic] and obvious bias of police," and "agreeing to sitipulate [sic] [to] felon in possession."[52] Each of these claims are without merit.

### A. Jenkins's Claim that Counsel Prevented him from Testifying

In his Supplemental Motion, Jenkins argues that he received ineffective assistance of counsel "when he was not allowed to testify at trial."[53] He claims he wanted to testify, "but counsel refused to allow it," and "he mist[]akenly believed that it was the lawyer's decision whether to allow a defendant to testify."[54] Jenkins claims his attorney told him that if he testified, the Government would put on 404(b) testimony regarding Jenkins's previous charge and prior

---

[50] *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (quoting *Baumann*, 692 F.2d at 571).

[51] Dkt. 112 at 4.

[52] *Id.* at 5.

[53] Dkt. 113 at 9.

[54] *Id.* at 9–10.

9

controlled drug buys, and the jury might instead convict him on this evidence.[55] But according to Jenkins, "counsel did not even give his client the opportunity to choose whether or not to testify. He made that decision for [defendant], and prevented him from letting the jury know his side of the story."[56] Jenkins argues that he "should have had the opportunity" to contradict the testimony of the APD officer witnesses, including that of Sergeant Witte.[57]

In the body of his Supplemental Motion, not in an affidavit, Jenkins also describes how he would have testified at trial. He claims that "he would have testified that the gun seized by APD was not his gun and that he did not have know[]ledge that the gun was underneath the driver's seat of the BMW he was driving."[58] "[T]he record w[ould] reflect that petitioner has had an ongoing feud with the Anchorage Police Officer[]s, where petitioner was implicated in a shooting incident, hence petitioner would have testified that he did not have knowledge of the gun being in the car and he did not actively employ the firearm in connection with his DUI arrest by APD police

---

[55] *Id.*

[56] *Id.* at 10.

[57] *Id.* at 12.

[58] *Id.* at 9.

officer[]s on the morning of his arrest."[59] Further, he claims that he would have been able to "tell his side of the story regarding . . . his past drug activities if questioned about [them]."[60]

Jenkins is not entitled to relief on this claim.

"The right of an accused to testify in his own defense is well established, and is a 'constitutional right of fundamental dimension.'"[61] This is a personal right that only the defendant can relinquish, "and the defendant's relinquishment of the right must be knowing and intentional."[62] Thus, "misinformation provided by counsel that affects the defendant's knowing and intelligent waiver of his right to testify certainly may implicate the [S]ixth [A]mendment."[63]

However, a defendant's waiver of his Sixth Amendment right need not be explicit as "[a] defendant is 'presumed to assent to his attorney's tactical decision not to have him testify.'"[64] In the Ninth Circuit, "defendants are not deprived of their right to testify [even] if counsel fails to inform them of this right."[65] Further, the court has no duty to advise a defendant of his right to testify or to ensure that on-the-record waiver occurs.[66] "The defendant's conduct provides a

---

[59] *Id.* at 11.

[60] *Id.* at 12.

[61] *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999) (quoting *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) and citing *Rock v. Arkansas*, 483 U.S. 44, 51 (1987)).

[62] *Id.* (quoting *Joelson*, 7 F.3d at 177).

[63] *United States v. Hood*, No. 88-4046, 1989 WL 102017, at *4 (9th Cir. Aug. 25, 1989).

[64] *Pino-Noriega*, 189 F.3d at 1094 (quoting *Joelson*, 7 F.3d at 177).

[65] *United States v. Sewell*, No. CR. S-05-554 LKK, 2012 WL 5523234, at *5 (E.D. Cal. Nov. 14, 2012) (citing and discussing *United States v. Nohara*, 3 F.3d 1239 (9th Cir. 1993); *United States v. Edwards*, 897 F.2d 445 (9th Cir. 1990); and *United States v. Martinez*, 883 F.2d 750 (9th Cir. 1989)).

[66] *Edwards*, 897 F.2d at 446 (quoting *Martinez*, 883 F.2d at 760).

11

sufficient basis from which to infer that the right to testify has been waived."[67] In the absence of an express waiver, "[t]he 'conduct' from which [the court] infer[s] this waiver [i]s the defendant's silence in the face of his attorney's decision not to call him."[68] Therefore, when neither the prosecution nor the court is given any reason to think that a defendant desires to testify, the defendant cannot invalidate the trial post-hoc by claiming he was unaware of his right to testify.[69]

But on several occasions throughout Jenkins's trial, the Court discussed with Jenkins whether he would testify. The Court told Jenkins that it was a decision he would have to make. Then when the Court asked Jenkins if he wanted to testify, Jenkins, himself, said that he would not testify. And when Jenkins's attorney told the Court that they would rest without putting on any evidence, Jenkins said nothing. Finally, the affidavit provided by Jenkins's trial counsel corroborates the events reflected in the trial transcript. While Jenkins has provided his own self-serving, unsworn statements in support of his claim, he has provided no actual evidence in the form of sworn affidavits or otherwise.

The record clearly demonstrates that Jenkins made a knowing and voluntary waiver of his right to testify. His claim of ineffective assistance is therefore barred by the Ninth Circuit's holding in *Edwards*.

Notwithstanding, even if Jenkins had shown that his attorney was ineffective, he has not shown that his inability to testify was prejudicial. A defendant cannot show he was prejudiced by

---

[67] *Id.* (quoting *Martinez*, 883 F.2d at 760).

[68] *Id.* (quoting *Martinez*, 883 F.2d at 760). *See also Nohara*, 3 F.3d at 1243–44 (upon consideration of defendant's claim that he received ineffective assistance of counsel when "his lawyer waived his right to testify at trial and neither his lawyer nor the court informed him of his right to testify," the court held that defendant's argument was precluded by *Edwards*).

[69] *Id.* at 447.

12

an inability to testify at trial where the evidence in the record shows "that the testimony [defendant] wished to give would not have affected the outcome of the trial."[70] In *Medley v. Runnels*, the Ninth Circuit held that the defendant was not prejudiced by his attorney's refusal to allow him to testify at trial because (1) the defendant would have been impeached by his prior convictions and statements made during the police interview, and (2) the defendant's testimony would have been inconsistent with the defense strategy and been undermined by other evidence presented at trial.[71]

Here, most of Jenkins's theoretical testimony does not bear on the elements of felon in possession. Only Jenkins's assertion that he would have testified that the gun did not belong to him and that he did not know it was in the car is material to the elements of felon in possession. But the evidence in the record shows that this testimony would not have affected the outcome of his trial. Officer Kahler's trial testimony regarding Jenkins's statements about the gun directly contradict Jenkins's hypothetical testimony. Yet, Jenkins does not explain how he would counter or refute Officer Kahler's testimony to the contrary: testimony that Jenkins's attorney already subjected to cross examination. Jenkins would be impeached by these prior statements. For these reasons, Jenkins has not shown prejudice.

Jenkins's claim that his attorney was ineffective when he prevented him from testifying is **DENIED**.

### B. Jenkins's Remaining Claims

In his Motion, Jenkins names two additional bases for his § 2255 claim. First, he argues "[i]neffective of assitace [sic] by Cousel [sic] . . . [p]rofiling speculation . . . Off Witte lying on

---

[70] *Medley v. Runnels*, 506 F.3d 857, 861–62 (9th Cir. 2007).

[71] *Id.*

stand [t]he Governments [sic] main witness."[72] And second, Jenkins alleges, "[i]neffective assitance [sic] of trial cousel [sic] regarding surppersion [sic] and obvious bias of police ineffective assitance [sic] for agreeing to sitipulate [sic] felon in possession."[73] These remaining claims are impermissibly vague and conclusory.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[74] When a habeas petition "consists solely of conclusory, unsworn statements unsupported by any proof or offer thereof," the petition may be dismissed without a hearing.[75]

In regard to the first of these claims, Jenkins does not identify how he believes counsel was ineffective. And in regard to the second of these claims, Jenkins again fails to identify how he believes counsel was ineffective concerning suppression and police bias issues. While Jenkins does also state, still within the context of this second claim, that counsel was ineffective for "[stipulating to] felon in possession," this claim is directly contradicted by the record; the sole charge in this case was for felon in possession, and Jenkins's guilt thereof was decided by a jury. Jenkins's attorney clearly did not stipulate to that ultimate factual determination.

Finally, as to both remaining claims, Jenkins fails to allege, let alone explain, how he was prejudiced by his attorney's alleged ineffective assistance. To establish prejudice, Jenkins must do

---

[72] Dkt. 112 at 4.

[73] *Id.* at 5.

[74] *Strickland*, 466 U.S. at 690.

[75] *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001).

more "than simply assert[] an error that could theoretically have some effect on the outcome of the proceeding."[76] Failure to establish prejudice is fatal to a defendant's claim.[77]

Jenkins's two remaining claims are denied.

## V. CONCLUSION

For the above reasons, the Court **DENIES** the Motion at Docket 112.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 9th day of August, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[76] *Applebury*, 2020 WL 4883936, at *3 (citing *Duncan*, 528 F.3d at 1246).

[77] *Gonzalez*, 667 F.3d at 987.